**SO ORDERED.**

**SIGNED March 22, 2022.**



_____
**JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: <br> Edgardo C. Ramayo Reyes <br> *Debtor* | Case No. 21-50277 |
| Sterling Automotive Group, Inc. and Arthur C. LeBlanc, Jr. <br> *Plaintiffs* <br><br> v. <br><br> Edgardo C. Ramayo Reyes <br> *Defendant* | Chapter 13 <br><br> Judge John W. Kolwe <br><br> Adv. Proc. No. 21-5008 |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT
(ECF ## 17, 20, AND 25)**

Before the Court are: (i) a Motion for Summary Judgment (ECF #17) filed by Plaintiff Arthur C. LeBlanc, Jr. ("Mr. LeBlanc") seeking a determination that a prepetition judgment entered in his favor awarding defamation damages and litigation costs and attorney's fees against the Debtor, Edgardo C. Ramayo Reyes, is nondischargeable under § 1328(a)(4) of the Bankruptcy Code; (ii) a Cross-Motion for Summary Judgment (ECF #20) filed by the Debtor opposing Mr. LeBlanc's Motion and claiming that the defamation damages and the award of costs and fees are fully

dischargeable because they represent an award of business damages, not personal injury damages; and (iii) a Motion for Partial Summary Judgment (ECF #25) filed by both Plaintiffs, Mr. LeBlanc and Sterling Automotive Group, Inc. ("Sterling"), seeking a determination that the injunctive relief awarded in the prepetition litigation between the parties is nondischargeable. For the reasons set out below, the Court concludes that Mr. LeBlanc's Motion and the Debtor's Cross-Motion should be granted in part and denied in part, and that the Plaintiffs' Motion for Partial Summary Judgment on the injunctive relief should be granted.

## Background

*The Pre-Petition Litigation*

On June 25, 2020, Mr. LeBlanc and Sterling filed a Complaint in the United States District Court for the Western District of Louisiana, Docket No. 6:20-cv-00809 (the "District Court Action"), against the Debtor. The Complaint asserted a number of actions the Debtor took to harm the reputation and business of both Plaintiffs, asserting causes of action for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); violation of the Lanham Act, 15 U.S.C. § 1125(a); dilution of the trade name "Sterling Premium Select" in violation of the Louisiana Anti-Dilution Act, La. R.S. § 51:223.1, defamation under Louisiana state law, violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. § 51:1401 *et seq.*, and breach of the non-disparagement provision in a Release and Compromise Agreement between the parties dated January 16, 2020. The Plaintiffs also requested certain injunctive relief.

The Debtor did not respond to the Complaint, and the Plaintiffs moved for a default judgment. Following an evidentiary hearing, the District Court ruled for the Plaintiffs, entering a Memorandum Ruling and Judgment on December 18, 2020.[1] The District Court found that the "well-pleaded allegations in the complaint as well

---

[1] *See* Memorandum Ruling, *Sterling Auto. Grp. Inc. v. Ramayo*, No. 6:20-CV-00809, 2020 WL 7495302, at *1 (W.D. La. Dec. 18, 2020) The Memorandum Ruling and Judgment are ECF #17 and 18, respectively, on the District Court docket.

2

as the evidence submitted in connection with the December 7th evidentiary hearing provide an independent basis in fact for all of the essential elements of the claims asserted by the Plaintiffs."[2] The following facts come from the District Court's detailed Findings of Fact.[3]

Sterling owns and operates car dealerships and engages in business at the dealerships, online, and through an affiliated auction company. Sterling's registered tradename, "Sterling Premium Select," is used at multiple Sterling dealerships and on websites run by Sterling. Sterling employed the Debtor, Edgardo Ramayo (also known as Edgardo Ramayo Reyes), but ultimately terminated him for misconduct.

The Debtor made a claim for unpaid wages and penalties and engaged in a campaign of posting disparaging comments about Sterling on social media. On January 16, 2020, Sterling and the Debtor entered into a Release and Compromise Agreement pursuant to which Sterling paid the Debtor $48,500, in exchange for which the Debtor both compromised his claims and agreed to a non-disparagement provision which prohibited him from making disparaging remarks against Sterling.

Notwithstanding the non-disparagement provision, the Debtor soon registered the domain name "www.sterlingpremiumselect.com" and listed it for sale for a purchase price of $99,999.00. The Debtor also linked the domain name to Sterling's active website, "www.sterlingpremiumusedcars.com," configuring the redirect so that anyone using it would see "F__k our Employees. Art LeBlanc" in the title tag on the website (i.e., the text that appears in the title bar of a web browser).

The Plaintiffs also presented the testimony of an expert to establish damages. Based on that testimony, which the District Court found to be credible, thorough, and persuasive, the court found that Sterling was damaged in the amount of $136,546.84 as a result of lost customers, and that the confusion created by the Debtor's social media posts and the website redirect's title tag caused irreparable damage to Sterling's reputation and weakened Sterling's brand positioning. Furthermore, the

---

[2] District Court Memorandum Ruling, 2020 WL 7495302, at *6.

[3] *Id.* at *1, *2.

3

expert found that the cost to reverse the damage to Sterling and Mr. LeBlanc's reputation would total $22,000. In addition, the District Court accepted the testimony and evidence of the Plaintiffs' attorneys establishing legal fees in the amount of $28,954.25, costs of $811.33, and expert witness fees of $4,539.05.

The corresponding final Judgment entered by the District Court[4] includes permanent injunctive relief, barring the Debtor from the creation, employment, registration or use in any manner of Sterling's name, and all variations thereof, and from publishing any defamatory, slanderous, and/or libelous statements or writings concerning Mr. LeBlanc and/or Sterling. The Judgment also orders the Debtor to transfer the domain name "www.sterlingpremiumselect.com" to Sterling, along with other provisions relating to the same. As to damages, the Judgment provides:

> 5. Sterling is hereby awarded statutory damages for Defendant's violation of the Anti-Cyber Squatting Protection Act in the amount of $20,000.00.
>
> 6. This case is deemed an exceptional case under 15 U.S.C. § 1117(a) and (b), and Defendant is liable for and ordered to reimburse Plaintiffs for its reasonable attorneys' fees in the amount of $28,954.25.
>
> 7. Defendant is liable to Plaintiffs for their costs in this action in the amount of $811.33 and expert witness fees of $4,539.05.
>
> IT IS FURTHER ORDERED that Defendant is liable for defamation and breach of contract, and the following relief is hereby ordered:
>
> 1. Defamation damages in the amount of $158,546.84; and
>
> 2. Defendant is ordered to pay to Sterling $48,500.00 for breach of contract.[5]

The Debtor did not appeal the District Court Judgment.

---

[4] District Court Action, ECF #18.

[5] *Id.*

4

*Procedural History of this Adversary Proceeding*

On July 8, 2021, shortly after the Debtor filed for bankruptcy protection under chapter 13, Mr. LeBlanc and Sterling commenced this Adversary Proceeding. The original Complaint (ECF #1) sought a determination that the debts in the District Court Judgment are nondischargeable as to both Plaintiffs under 11 U.S.C. § 523(a)(6). The Debtor filed a Motion to Dismiss and/or Motion for Summary Judgment (ECF #11) on August 18, 2021, arguing that the judgment in favor of Sterling should not be excepted from discharge under 11 U.S.C. § 1328(a)(4) because Sterling is not an individual. He also asserted that the Judgment in favor of Mr. LeBlanc for breach of contract is fully dischargeable under 11 U.S.C. § 1328(a)(4) because breach of contract is not a "personal injury."

Some background is in order. Sterling and Mr. LeBlanc's original Complaint sought a declaration of nondischargeability under § 523(a)(6), which renders nondischargeable debts "for willful **and** malicious injury by the debtor to another entity **or to the property of another entity**" (emphasis added). However, the Debtor's bankruptcy case is under chapter 13, which is subject to special nondischargeability rules. Notably, § 1328(a) renders most debts dischargeable except for certain debts listed in the statute. Specifically, section 1328(a)(2) renders nondischargeable debts "of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)," which *does not* include § 523(a)(6). Thus, Sterling and Mr. LeBlanc cannot rely on § 523(a)(6) in this chapter 13 case and instead must proceed under § 1328(a)(4), which renders nondischargeable debts for damages "awarded in a civil action against the debtor as a result of willful **or** malicious injury by the debtor that caused personal injury *to an* **individual** or the death of an individual" (emphasis added).

The problem for Sterling is that it is a legal entity, and both the statute and case law are clear that only debts to "individuals" are nondischargeable under § 1328(a)(4).[6] Thus, the Court concluded that Sterling's claims must be dismissed,

---

[6] *See, e.g.*, *In re Baca*, 513 B.R. 737, 740 (Bankr. D. Col. 2014) ("[C]ase law supports the conclusion that an 'individual,' as contemplated by Congress within the language of section 523(a), which contains

5

and it granted the Debtor's Motion to Dismiss in part on that basis. The Court also agreed with the Debtor's contention that, under the facts of this case, the damages granted by the District Court for breach of contract do not constitute "personal injury" damages under § 1328(a)(4).[7] Thus, the Court also granted summary judgment in part with respect to the damages rendered for the breach of contract claim. However, the Court held that the remainder of the Complaint, relating to the Judgment in favor of Mr. LeBlanc for defamation, could proceed. The Court entered a Judgment to that effect on October 7, 2021 (ECF #14).

Although the Court dismissed Sterling's claims, the Plaintiffs filed a Second Amended and Restated Complaint Objecting to the Dischargeability of Debt (ECF #16), which added Sterling back to this action as a Plaintiff to assert a claim for nondischargeability of the District Court's award of permanent injunctive relief and also changed the basis for the nondischargeability claim to § 1328(a)(4) rather than § 523(a)(6).

On October 27, 2021, Mr. LeBlanc filed a Motion for Summary Judgment (ECF #17), seeking a declaration that the defamation damages awarded to him in the amount of $158,546.84, as well as court costs of $811.33, expert fees of $4,539.05, and attorney's fees of $28,954.25, are nondischargeable under § 1328(a)(4). The Debtor filed an Opposition and Cross-Motion for Summary Judgment on November 21, 2021, claiming the damages represented business losses to Sterling, not Mr. LeBlanc, and are therefore dischargeable. The Debtor also contends that even if the defamation damages are nondischargeable, the court, expert witness fees, and attorney's fees

---

exceptions to discharge provisions similar to section 1328(a)(4), is not defined in the broad sense of a 'person' under section 101(4) to include fictitious entities; but rather, in the narrow and more specific sense of a natural, living individual. Additionally, and not unimportant to this Court's analysis here, is the fact that the bankruptcy code itself defines the term 'corporation' in 11 U.S.C. § 101(9) to expressly exclude the term individual." (footnotes omitted)).

[7] *See, e.g., In re Brown*, No. A08-00235-DMD, 2008 WL 8652592, at *2 (Bankr. D. Alaska Nov. 17, 2008) ("She has suffered an economic injury resulting from misrepresentations she says were made by Mr. Brown. Even if this breach of contract could be considered a willful and malicious injury under § 523(a)(6), in the context of a discharge granted under § 1328(a), any unpaid portion of her claim would be discharged. The debtor's conduct has not resulted in personal injury or death to Ms. King, as required for exception to discharge under § 1328(a)(4). On the other hand, if this case is converted to chapter 7, Ms. King will have an opportunity to assert her § 523(a)(6) claim in the chapter 7 case.").

6

should not be excepted from discharge. On December 10, 2021, both Mr. LeBlanc and Sterling filed a Motion for Partial Summary Judgment seeking a declaration that the injunctive relief awarded in the District Court Judgment is nondischargeable. The Court will address the parties' arguments on each of these Motions in the Analysis section of the opinion, below.

## Summary Judgment Standard and Applicable Law

All three Motions are subject to the usual Fed. R. Civ. P. 56 summary judgment standard, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, the facts (which were already determined by the District Court in the previous action) are undisputed, and the Court's task is simply to determine the applicable law and interpret the effect of the District Court Judgment.

Section 1328(a)(4) of the Code sets forth the applicable law. It excepts from a standard chapter 13 discharge "any debt—(4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful *or* malicious injury by the debtor that caused personal injury **to an individual** or the death of an individual."[8] For a debt to be nondischargeable under this provision several requirements must be satisfied. First, it must be shown that the debt resulted from damages awarded in a civil action against the debtor. Second, the debt must have resulted from willful or malicious injury. Finally, the injury must be a personal injury to an individual or the death of an individual.[9]

While the language of § 1328(a)(4) is straightforward, the terms "willful or malicious injury" and "personal injury to an individual" deserve a bit more examination, especially in light of the language of § 523(a)(6), which also defines nondischargeable debts. As one commentator has noted, the willful *or* malicious

---

[8] 11 U.S.C. § 1328(a)(4) (emphasis added).

[9] *See* 8 C*ollier on Bankruptcy*, ¶1328.02[3][k] (Richard Levin & Henry J. Sommer eds., 16th ed.).

injury standard "is a lower standard from section 523(a)(6), which requires the debt to be the result of a willful *and* malicious injury."[10] Under § 1328(a)(4) a plaintiff need only show that the Debtor's actions were *either* willful *or* malicious.[11]

A willful injury requires "either objective substantial certainty [of injury] or subjective motive [to injure]."[12] "Malicious" means an act done with the actual intent to cause injury.[13] If either of these standards are met, then the debt should be nondischargeable under § 1328(a)(4) if the injury was a personal injury to an individual or the death of an individual.

Courts have grappled with whether the term "personal injury to an individual" includes both bodily injuries and nonphysical injuries. Most courts have refused to limit personal injury to only bodily or physical injury, and have concluded that debts caused by nonphysical injuries, such as defamation, intentional infliction of emotional distress, invasion of privacy, and harassment may be nondischargeable under § 1328(a)(4).[14] Note, however, that unlike § 523(a)(6), injuries to property are not included in § 1328(a)(4).[15] It also excludes injuries to fictitious entities.[16]

---

[10] 8 C*ollier on Bankruptcy*, ¶1328.02[3][k] (emphasis in original).

[11] *Adams v. Adams (In re Adams)*, 478 B.R. 476, 484 (Bankr. N.D. Ga. 2012).

[12] *Lear v. Little*, 613 B.R. 872, 877 (M.D. La. 2020), quoting *In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005); *see also Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

[13] *In re Dhaliwal*, 630 B.R. 24, 32 (Bankr. S.D. Tex. 2021).

[14] *See Plys v. Ang (In re Ang),* 589 B.R. 165, 180 (Bankr. S.D. Cal. 2018) ("The vast majority of courts define 'personal injury' as harm both physical and nonphysical (such as defamation and intentional infliction of emotional distress"); *B.B. v. Grossman (In re Grossman)*, 538 B.R. 34, 41 - 42 (Bankr. E.D. Cal. 2015) ("It follows that when Congress used the term 'personal injury' in § 1328(a)(4) without the qualifier "bodily," it must have meant a class of 'personal injury' not limited to the body. It follows that Congress was including nonphysical injuries not associated with property damage."); *In re Adams*, 478 B.R. at 485-488 (harassment, stalking and defamation are personal injury claims covered by § 1328(a)(4)); and *Adelson v. Smith (In re Smith)*, 389 B.R. 902 (Bankr. D. Nev. 2008) (libel claims are personal injury tort claims); *see also* 8 C*ollier on Bankruptcy*, ¶1328.02[3][k] ("Because, unlike section 522(d)(11)(D), the statute does not refer to a 'personal bodily injury,' courts have held that bodily injury is not required.").

[15] *See Krein v. Szewc (In re Szewc)*, 568 B.R. 348, 358 (Bankr. D. Or. 2017) ("'[P]ersonal injury' depends on whether the claim ... primarily protects a 'personal' as opposed to 'property, financial, or business' right."); *In re Brown*, 2008 WL 8652592, at *2 (breach of contract damages are not personal injury damages); *see also* 8 C*ollier on Bankruptcy*, ¶1328.02[3][k] ("[U]nlike section 523(a)(6), injuries to property are not included.").

[16] *See In re Baca*, 513 B.R. at 740 ("'individual' . . . is not defined in the broad sense of a 'person'

## Analysis

*The Defamation Damages are Nondischargeable as to Mr. LeBlanc.*

Mr. LeBlanc argues that the defamation damages were necessarily for "willful or malicious injury by the debtor that caused personal injury to an individual" within the meaning of § 1328(a)(4), such that the damages are nondischargeable.[17] The Debtor does not contest that the damages resulted from his willful or malicious actions. Rather, he argues that the defamation damages represent business and financial damages of Sterling, not Mr. LeBlanc personally, and as a result the debt is fully dischargeable.[18]

Although the Debtor apparently concedes that the defamation damages were the result of his willful or malicious actions, the Court has nonetheless conducted an independent review of the District Court's Memorandum Ruling and concludes that those damages did indeed result from a willful and malicious injury by the Debtor to Mr. LeBlanc.

The District Court found that "Ramayo's [the Debtor's] use of 'www.sterlingpremiumselect.com' domain name and a vulgar title tag for internet traffic that were directed to Sterling's website was defamatory *per se* with respect to Sterling **and LeBlanc**."[19] Under Louisiana law, "Words that 'by their very nature tend to injure one's personal or professional reputation' are considered defamatory *per se*."[20] By finding the Debtor's actions were defamatory *per se*, the District Court necessarily concluded that the Debtor acted *willfully, and with malice*, to cause injury to both Sterling and Mr. LeBlanc—i.e., he undertook the actions with the actual

---

under section 101(4) to include fictitious entities; but rather, in the narrow and more specific sense of a natural, living individual.").

[17] *See* Mr. LeBlanc's Memorandum in Support of Motion for Summary Judgment (ECF #18).

[18] *See* the Debtor's Response and Cross-Motion for Summary Judgment, pp. 3-4 (ECF #20).

[19] District Court Memorandum Ruling, 2020 WL 7495302, at *6 (paragraph numbers omitted, emphasis added).

[20] District Court Memorandum Ruling, 2020 WL 7495302, at *4 (citing *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004).

9

intent to cause injury.[21] This point was driven home by the District Court in its Ruling:

> Ramayo's defamatory statements were intentionally published to third parties and injured Sterling's **and LeBlanc's reputations**. These statements were false and misleading, and Ramayo's conduct was willful and malicious in publishing these defamatory statements.
>
> The Court concludes that Sterling **and LeBlanc** are entitled to damages of $158,546.84 for their Louisiana defamation claims.[22]

The District Court's Findings of Fact and Ruling establish the requirement under § 1328(a)(4) that the debt—Mr. LeBlanc's claim—result from a willful or malicious injury by the Debtor. The Court next turns to whether the Debtor's actions caused a personal injury to Mr. LeBlanc.

A perusal of Louisiana law shows that the tort of defamation results in a personal injury to the person defamed.[23] Indeed, the District Court, in the Conclusions of Law section of its Memorandum Ruling, found that "a defamation plaintiff may recover damages for injury to reputation, personal humiliation, embarrassment, and mental anguish 'even when no special damage such as loss of income is claimed.'"[24] Thus, in awarding general defamation damages to Mr. LeBlanc, the District Court necessarily was granting him compensation for the injuries he suffered to his personal reputation, as well as for the personal humiliation,

---

[21] *See Steed v. St. Paul's United Methodist Church*, 728 So. 2d 931, 940 (La. Ct. App. 1999) ("When words are defamatory per se, the elements of falsity and malice are presumed . . ."); *see also In re Dhaliwal*, 630 B.R. at 32 and *Lear v. Little*, 613 B.R. at 877.

[22] District Court Memorandum Ruling, 2020 WL 7495302, at *6 (paragraph numbers omitted, emphasis added).

[23] *See, e.g., Connor v. Scroggs*, 821 So. 2d 542, 552 (La. Ct. App. 2002), ("Damages for defamation include both special damages and nonpecuniary or general damages. General damages may include injury to reputation, personal humiliation, embarrassment, mental anguish, anxiety and hurt feelings." (citations omitted)).

[24] District Court's Memorandum Ruling, 2020 WL 7495302, at *4, (citing *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004)).

embarrassment, and mental anguish he suffered as a result of the Debtor's willful and malicious actions.

The only remaining question is whether this type of injury—one that does not cause a physical injury—equates to the type of "personal injury" that should be excepted from discharge under § 1328(a)(4). As noted above, in the discussion of the applicable law, most courts have refused to limit personal injury to only bodily or physical injury, concluding that debts caused by nonphysical injuries, such as defamation, intentional infliction of emotional distress, invasion of privacy, and harassment may be nondischargeable under § 1328(a)(4). This Court agrees with the majority, and finds that debts resulting from nonphysical injuries, such as defamation, may be nondischargeable under § 1328(a)(4).

The Debtor does not dispute that defamation claims can constitute claims for personal injury under § 1328(a)(4). Rather, he attempts to differentiate the cases that have found damage awards for nonphysical injuries nondischargeable, contending those cases do not apply here because: (a) the District Court's award of $158,546.84 in defamation damages is primarily attributable to Sterling's defamation claim, which is dischargeable under § 1328(a)(4) because Sterling is a business, not an individual, and (b) the awarded damages were not for an injury to Mr. LeBlanc personally, only to his business or finances.[25]

In further support of these assertions, the Debtor contends that the District Court's award, which applies on its face to Sterling *and* Mr. LeBlanc, was based on expert testimony establishing $136,546.84 to be attributable to business damages, including lost customers, and that none of that portion can apply to Mr. LeBlanc personally.[26] The Debtor also contends that the remaining $22,000 in defamation damages was attributable to the cost to Sterling and Mr. LeBlanc to repair their reputations, which he argues also constitutes only business damages.[27]

---

[25] *See* the Debtor's Response and Cross-Motion for Summary Judgment, pp. 3-4 (ECF #20).

[26] *Id.* at p. 4.

[27] *Id.* at p. 4.

The Court disagrees. Simply put, the Debtor cannot contend that the damages for the defamation claim only concerned business harm, when the District Court did not limit its findings to business reputation damages and when the Debtor himself made it personal with respect to Mr. LeBlanc by adding HTML code to make the title bar of the website read "F__k our Employees. Art LeBlanc." Furthermore, the District Court did not divide the damages award between Sterling and Mr. LeBlanc, as the Debtor now attempts to do based on his reading of the evidence presented at the hearing he failed to attend, and on his supposition of what the District Court intended in awarding defamation damages jointly to Mr. LeBlanc and Sterling. If the Debtor had wished to challenge the merits of the defamation claim or divide the damages between Sterling and Mr. LeBlanc, he should have participated in the District Court action. It is not this Court's place to second-guess the District Court Judgment or to carve it up when it is plainly written as a joint award for the defamation claim.

The Court therefore concludes that the District Court's award of defamation damages in the amount of $158,546.84 is nondischargeable under § 1328(a)(4).

*The Court Costs, Expert Fees, and Attorney's Fees Are Dischargeable.*

The same result does not obtain for the award of costs, expert witness fees, and attorney's fees. Mr. LeBlanc concedes that the state law defamation claims asserted by Mr. LeBlanc individually (i.e., the claim giving rise to the nondischargeable debt under § 1328(a)(4)) does not allow for the award of associated fees and costs. Thus, if the only claim asserted in the prior lawsuit had been Mr. LeBlanc's defamation claim, he could not have included a claim for attorney's fees or costs. The fees and costs were only awarded because they were statutorily allowed in connection with other claims involving injury to business, not personal injury, and those claims, notably, are subject to discharge in bankruptcy because they do not fall under § 1328(a)(4)'s exception to discharge.[28]

---

[28] If the underlying claim is nondischargeable under § 1328(a)(4), then the associated fees and costs might also be nondischargeable. *See, e.g., In re Baca*, 513 B.R. at 741-42 (holding that because the state law claim at issue was potentially nondischargeable, the attorney's fees and costs might also be nondischargeable). However, if the underlying claim is dischargeable, so are the associated fees and

Mr. LeBlanc argues that the fees and costs should still be included in the nondischargeable personal injury claim for defamation to an individual because the claims are so interrelated that they cannot be separated. The Court disagrees. The fact that attorney's fees and costs cannot be awarded under Louisiana law for a defamation claim means that the fees and costs are easily separated from the defamation claim, and they are subject to discharge. Accordingly, the Court will grant the Debtor's Cross-Motion for Summary Judgment (ECF #20) in part on the issue of attorney's fees and costs.

*The Injunctive Relief Is Not a Debt, So It Is Not Dischargeable.*

The District Court Judgment includes the following award of permanent injunctive relief:

> Defendant, and any interposed or affiliated legal entity, is immediately and permanently restrained and enjoined from:
>
> 1. Any and all creation, employment, registration or use, in any manner or form, of the name "Sterling," "Sterling Premium," or "Sterling Premium Select," or any and all variations thereof, including common misspellings, or any other trade name, trademark, service mark, domain name, belonging to Sterling, or any variant or any colorable imitation thereof;
>
> 2. Publishing any defamatory, slanderous, and/or libelous statements or writings, whether on social media or otherwise, concerning Mr. LeBlanc and/or Sterling.[29]

The injunction does not set out any damages award in the event the Debtor violates it; it is written simply as a strict and permanent prohibition against engaging in the enjoined activities.

Mr. LeBlanc and Sterling argue that the injunctive relief cannot be discharged because it is not a "debt" under § 1328(a)(4). They rely on § 101(12) of the Code that

---

costs, which necessarily arise out of that claim.

[29] *See* District Court Judgment (ECF #18 on the District Court docket).

13

21-05008 - #33  File 03/22/22  Enter 03/22/22 16:06:13  Main Document  Pg 13 of 16

defines "debt" as a "liability on a claim," and § 101(5) that defines "claim" as a right to payment, or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.[30] The Plaintiffs argue that because the permanent injunction here does not require the payment of money, only a prohibition against the enjoined actions, it is not a "claim" within the meaning of the Bankruptcy Code, and because it is not a "claim," the Debtor's obligation to honor the injunction cannot be a "debt," or "liability on a claim." In further support of their argument, the Plaintiffs cite cases concluding that certain injunctive relief, including covenants not to compete, are nondischargeable in bankruptcy.[31] The Plaintiffs have alerted the Court to the existence of a few cases that allow certain injunctive relief to be discharged, but they point out that those cases involve injunctions requiring the obligee to spend money to comply with the injunction, e.g., an obligation to reclaim a mining site or conduct environmental cleanup.[32]

The Debtor, on the other hand, argues that the injunction is capable of being reduced to a money judgment because any violation would violate state or federal law (e.g., a Louisiana defamation claim or a violation of the federal Lanham Act, as in the original suit), all of which would give rise to a money judgment. While that might be true for any of those claims absent an injunction, the Debtor does not cite any cases demonstrating that the violation of a prohibitory injunction should be treated the same under § 1328(a)(4). At best, the Debtor attempts to distinguish some of the cases cited by the Plaintiffs by claiming those types of injunctions (covenants not to compete and an injunction regarding a state consumer protection law) are somehow different from the injunction at issue here, barring the Debtor from engaging in certain behavior against the Plaintiffs.

---

[30] 11 U.S.C. §§ 101(12) and 101(5)(A)-(B).

[31] *See* the Plaintiffs' Memorandum in Support, pp. 4-5 (ECF #26) (citing *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493 (6th Cir. 2001); *In re Steffy*, 494 B.R. 574 (N.D. Ga. 2012); *In re Peltz*, 55 B.R. 336 (M.D. Fla. 1985)).

[32] *Id*. at pp. 5-6 (citing *In re Daniels*, 130 B.R. 239 (Bankr. E.D. Ky. 1991); *U.S. v. Whizco, Inc.* 841 F.2d 147 (6th Cir. 1988); *Ohio v. Kovacs*, 469 U.S. 274 (1985)).

14

The Court finds that the permanent injunction here is not a "debt" that can be discharged in bankruptcy because it is not, on its face, a claim reducible to a money judgment. The Court in *In re Toste* reached a similar conclusion:

> We also question whether the permanent injunction portion of the Judgment can ever be nondischargeable. Both §§ 523 and 1328(a)(4) except only debts from discharge. The Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim," in turn, refers either to a payment or to certain equitable remedies. 11 U.S.C. § 101(5)(A)-(B).
>
> Here, the permanent injunction enjoined the Debtors from interfering with the easement in the future and does not facially provide a right to payment. Determining whether the injunction is a claim pursuant to § 101(5)(B) turns on whether it gives rise to an alternative or corollary right to payment. *See Matter of Udell*, 18 F.3d 403, 407 (7th Cir. 1994); *United States v. The LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1008 (2d Cir. 1991). **Nothing in the current record establishes that the Debtors have the option to pay the Smedbergs so as to continue interfering with the easement.** *See In re Chateaugay Corp.*, 944 F.2d at 1008.[33]

Likewise, the District Court Judgment in this case does not set out any alternative to compliance with the permanent injunction, and it is silent as to any right to payment. The Court will not read in a requirement that is not there. Accordingly, the Court finds that the permanent injunction is not dischargeable because it is not a "debt" within the meaning of the Bankruptcy Code. The Plaintiffs' Motion for Partial Summary Judgment (ECF #25) will therefore be granted.

## Conclusion

Prepetition, the District Court entered a judgment against the Debtor awarding Mr. LeBlanc $158,546.84 in defamation damages. This Court has reviewed the District Court's Memorandum Ruling and Judgment in light of 11 U.S.C.

---

[33] *In re Toste*, No. ADV 12-02333, 2014 WL 3908139 *4 n.7 (B.A.P. 9th Cir. Aug. 12, 2014) (emphasis added).

§ 1328(a)(4) and finds that the award of these damages is nondischargeable because the debt resulted from a malicious or willful injury by the Debtor that caused a personal injury to Mr. LeBlanc. Therefore, Mr. LeBlanc is entitled to judgment on his Motion (ECF #17) declaring the damages award for defamation in the District Court Judgment is nondischargeable. Otherwise, Mr. LeBlanc's Motion denied. The Debtor's Cross-Motion for Summary Judgment (ECF #20) is granted in part, in that the District Court's award of costs and fees are declared to be dischargeable because those fees and costs would not have been recoverable as damages on a defamation claim under Louisiana law; otherwise, the Debtor's Motion is denied. Finally, the Plaintiffs' Motion for Partial Summary Judgment (ECF #25) is granted, and they are entitled to a judgment declaring that the permanent injunction in the District Court Judgment is nondischargeable because such injunctive relief is not a claim for payment, and the breach of such injunction does not give rise to an immediate payment of money.

Counsel for Mr. LeBlanc and Sterling shall submit a proposed Order in conformity with this Ruling within ten (10) days.

###